JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant William Bambeck ("appellant") appeals the decision of the lower court. Having reviewed the arguments of the parties and the pertinent law, we hereby reverse and remand to the lower court.
 I {¶ 2} On January 4, 2004, appellant and defendant-appellee Mary Beth Berger were involved in a car accident. Appellant sued in Parma Municipal Court for property damages and was awarded $1,654.30 after a jury trial on January 17, 2007. However, appellant felt the trial court judge was biased against him, and he filed a motion for a new trial pursuant to Civ.R. 59(A)(1). He claimed that there were several irregularities in the court proceedings.
 {¶ 3} Appellant argued that the lower court judge was hostile to him. Specifically, appellant argued that the lower court judge erroneously forced him to remove the cross that he always wore on a chain around his neck, stating that if he did not remove it he would be banned from the courthouse. Additionally, throughout the proceedings, the court addressed appellant and his counsel in what can only be described as a patronizing and sarcastic manner. Appellant argues that this prejudiced him before the jury and, as a result, he did not receive a fair trial. Appellant's motion for a new trial was denied on February 9, 2007, and he now appeals.
 II *Page 4 {¶ 4} Appellant's first assignment of error provides the following: "The trial court erred when it prevented appellant, under threat of contempt, from wearing a cross around his neck during trial."
 {¶ 5} Appellant's second assignment of error provides the following: "The trial court erred by demonstrating a pattern of hostility to appellant and to appellant's attorney in the presence of the jury, causing the jury to be prejudiced against the appellant and resulting in an inadequate verdict."
 III {¶ 6} Civ.R. 59(A), new trial, provides that a "new trial may be granted to all or any of the parties *** [based] upon *** (1) irregularity in the proceedings of the court, *** or any order of the court *** by which an aggrieved party was prevented from having a fair trial ***." We review the granting or denial of a motion for a new trial for an abuse of discretion. Rohde v. Farmer (1970), 23 Ohio St.2d 82.
 {¶ 7} We address appellant's second assignment of error first because it is dispositive of this appeal. We find the record replete with statements demonstrating a pattern of hostility toward appellant and his attorney. These statements resulted in prejudice against appellant, which clearly prevented a fair and impartial trial. The trial court made hostile comments to appellant in the presence of the jury concerning the value of the vehicle repairs. Appellant testified that the value of his car before the accident, after all of the work that he put into it, was in excess of $13,000.[1] Appellant *Page 5 
further testified that after the accident the value of the car was now less than $3,500. In addition, appellant offered into evidence exhibits, which were admitted. The exhibits demonstrated that appellant paid in excess of $2,200 for repairs to the vehicle. Appellant further noted that he made the repairs himself, and there was still unrepaired damage to the vehicle.
 {¶ 8} The judge made several hostile comments to appellant and his attorney concerning the value of the car. "You really have to move this along and talk about the case and the car."[2] "Okay, the answer is he used the manual, next."[3] When appellant was talking about the methods he used to estimate the damage to his car, the judge interjected, "Which method did you use? Tell us that only."[4]
Appellant was asked if there was a collision. He answered by saying that appellee turned too sharply, and the court said "By that you mean yes."[5] Later, when appellant was answering questions as to whether there was a collision, the court said:
 "Stop talking. Sir, when he asks you a yes or no question, here's the answer, yes or no. We can't possibly make the trial last three *Page 6 days on the extent of the damage to your car. Try as you will, we're not going to do it. Go."[6]
 {¶ 9} The court examined appellant at length about the list of comparable cars he used to support his opinion as to the value of his car. A review of the colloquy concerning comparisons between a fictitious pen and vehicle values demonstrates hostility on the part of the lower court regarding appellant's credibility.
 "THE COURT: I've got to ask one more question. That list that you have for the asking prices-
 THE WITNESS: Um-hmm.
 THE COURT: — none of those list a price that it sold for, what a vehicle is really worth, just what it's asked for, correct? I think this is a premium Judge Gilligan pen. I think this is worth about $12,000.00. I could list that for $12,000.00 on that article, could I not? Could I ask $12,000.00 for this premium Judge Gilligan pen in that listing?
 THE WITNESS: Well, Your Honor you ask for that listing and I gave it. *Page 7 
 THE COURT: Okay. I could list this pen, answer my question yes or no, can I list my pen, my premium pen, for $12,000.00 in that list you just provided?
 THE WITNESS: Anything you want.
 THE COURT: Thank you. Anything else, Mr. Derkin?"[7]
 (Emphasis added.)
 {¶ 10} Later, when appellant was testifying as to the kind of paint used on his car and he started to repeat an answer he had previously given, the court — in its impatience — interrupted and said, "Electro static spray, yes, four coats, yes you did."[8] The court again showed its impatience and interrupted appellant before he could finish answering the question posed to him, "Okay, yes. Next question," and "There's no question before you sir."[9] Contrast this with only one sua sponte interruption of appellee during his cross-examination of appellant.
 {¶ 11} Later, after appellee's counsel finished his cross-examination of appellant, the court cross-examined appellant in a hostile manner. One of the issues was that appellant claimed appellee's insurance adjuster damaged the hood of his car by writing on some papers resting on the hood. The tone of disbelief on the part of the trial court is easy to recognize in the testimony. *Page 8 
 "THE COURT: But the roof was dented only because someone placed a ballpoint pen on it.
 THE WITNESS: No, the hood.
 THE COURT: I'm having trouble putting this together. I consider myself relatively educated, but I'm having trouble putting this together, how it works for you.
 MR. DERKIN: Not the roof, Your Honor, the hood.
 THE WITNESS: The hood-
 THE COURT: The hood. Everything was worn out and needed to be replaced but the hood had to be painted because someone touched it with a pen."
 (Emphasis added.)
 {¶ 12} In addition to the testimony above, the trial court threatened to hold appellant's counsel in contempt for asking a question about insurance subrogation. However, the court later allowed appellee's counsel to ask the same question unimpeded.
 {¶ 13} During appellant's counsel's re-cross-examination of appellee's witness, an insurance adjuster who examined appellant's automobile, the following discussion took place: *Page 9 
 "Q: And again, just so we're clear on this, Allstate Insurance Company is responsible to be paying whatever verdict is rendered in this case, correct?
 MR. TYMINSKI: Objection.
 THE COURT: Sustained. The jury will disregard that question.
 BY MR. DERKIN: Allstate Insurance Company —
 THE COURT: Don't rephrase it, you knew the first one was improper and if you do it again I'll hold you in contempt Mr. Derkin. Now roll the dice if you like. You knew it was improper, you asked it, I know it's improper, I'm telling you to stop it. You want to test me, test me."[10]
 {¶ 14} During appellant's counsel's initial cross-examination of the same witness, a sidebar conference was held to determine the propriety of the very question that the court found so improper during re-cross. The court had ruled that appellant's counsel could examine the witness on the issue of his employer's interest in the outcome of the case, testing the witness' interest, bias, or prejudice: *Page 10 
 "Q: All right, thank you. Referring to both of these estimates, you're employed by the Allstate Insurance Company, is that correct?
 MR. TYMINSKI: Objection.
 MR. DERKIN: May we approach?
 THE COURT: Let me see the estimates and yes you can approach.
 BY MR. DERKIN:
 Q: Again, you're employed by the Allstate Insurance Company?
 THE WITNESS: Is it okay to answer?
 THE COURT: Yes.
 ***
 Q: Okay. And the Allstate Insurance Company is responsible for paying the damages to Mr. Bambeck's vehicle is that correct? *Page 11 
 A: That was caused by the accident, correct."[11]
 {¶ 15} In addition to the comments above, there were many other hostile comments made by the trial judge. Many of these interjections by the trial court were done when there was no objection to be ruled on and done in such a way as to demonstrate impatience with appellant and his case.
 {¶ 16} In Kaffeman v. Maclin, 150 Ohio App.3d 403, 407,2002-Ohio-6479, we held that the "record in this case is replete with evidence of the lower court's bias against the defendants in this matter, which clearly prevented a fair and impartial proceeding. *** Because it is impossible to assess the prejudicial effect of the trial judge's conduct on the proceedings, there is simply no way that any review of this matter can produce satisfaction that justice was done."
 {¶ 17} The trial court made one inappropriate comment after another in the presence of the jury. The record is replete with evidence of the lower court's bias against appellant in this matter, preventing a fair and impartial proceeding. Accordingly, the validity of the entire trial, including the decisions made by the trial court on evidentiary issues, has been drawn into question. Because it is impossible to assess the prejudicial effect of the trial judge's conduct on the proceedings, there is simply no way that any review of this matter can produce satisfaction that justice was done. Accordingly, we conclude that the lower court abused its discretion. *Page 12 
 {¶ 18} Appellant's second assignments of error is sustained. The disposition of appellant's second assignment of error renders a review of appellant's first assignment of error moot. Although we did not review appellant's first assignment of error, we do take note of the fact that the trial judge's comments regarding appellant's necklace were unnecessary and misplaced.
 {¶ 19} Judgment reversed and case remanded for new trial.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., CONCURS; FRANK D. CELEBREZZE, JR., J., DISSENTS
[1] Tr. 15.
[2] Tr. 11.
[3] Tr. 13.
[4] Tr. 15.
[5] Tr. 18.
[6] Tr. 18.
[7] Tr. 57.
[8] Tr. 27.
[9] Tr. 32.
[10] Tr. 79.
[11] Tr. 72-73. *Page 1